## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RONALD E. SEXTON, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> BANKERS STANDARD INSURANCE ) <br> COMPANY d/b/a CHUBB, ) <br> ) <br> Defendant. ) <br> _____) | Case No. 24-2388-TC-BGS |

### MEMORANDUM & ORDER ON MOTION TO COMPEL INSPECTION

Now before the Court is Defendant's Motion to Compel Inspection and supporting memorandum. (Docs. 72, 73.) Having reviewed the submissions of the parties, Defendant's motion is **GRANTED in part** and **DENIED in part** as more fully set forth herein.

### BACKGROUND

This is a breach of contract/insurance coverage dispute arising from Plaintiff's homeowner's insurance policy with Defendant Bankers Standard Insurance Company ("Defendant" or "BSIC").[1] When issuing the policy, Defendant determined that the total replacement value of Plaintiff's 12, 621 square foot residence was almost $8 million.

In May 2021, Plaintiff reported that his residence suffered a water intrusion through the roof, causing extensive damage, on October 7, 2018 ("subject water intrusion"). Defendant has paid a portion of the repair cost under the policy but denies Plaintiff's allegations and claims, denies that there is coverage under the subject homeowner's policy for damages continued to be claimed by Plaintiff, and denies that it has further obligation to pay under the policy. Defendant also asserts

---

[1] Defendant has not yet filed an Answer to Plaintiff's Complaint (Doc. 1.) Rather, Defendant filed a motion to dismiss Plaintiff's claims (Doc. 6), which remains pending before the District Court. Despite the dispositive motion, discovery in this case has not been stayed.

1

that Plaintiff's claims are time-barred by the 5-year contractual limitations period of the subject policy.

Plaintiff has made a total of four water intrusion-related insurance claims relating to his residence. In addition to the subject water intrusion, Defendant had resolved a prior water intrusion claim from Plaintiff in Spring 2018. Plaintiff made another water damage claim with PURE Insurance, based on a December 2019 loss. Finally, Plaintiff made an additional water damage claim with PURE Insurance for a March 2022 loss.[2]

Defendant asserts that contemporaneously, Plaintiff and his contractors have claimed ongoing, post-policy water damage, allegedly from the roof that Plaintiff had been paid to replace in its entirety, in Spring 2019 and May 2020. (Doc. 65, at 1.)

> Faced with four water insurance claims in so many years, [Defendant] served discovery seeking to identify (i) what portions of the residence and Plaintiff's personal property were damaged and when; (ii) what damages were claimed in which insurance claims; and (iii) the supporting documentation for the same.

(*Id.*, at 1-2.)

Within this backdrop, Defendant filed a request for inspection of Plaintiff's residence on June 16, 2025. (Doc. 51.) Therein, Defendant requested permission for

> entry of [its] representatives and experts onto Plaintiff's land and property to inspect, measure, survey, sample, photograph, and videotape the residence located at 2900 Verona Road, Mission Hills, Kansas 66208, which is the location of the home where the damage allegedly occurred on October 7, 2018. [Defendant] would like to conduct this inspection on Friday, July 11, 2025, beginning at 9:30 a.m. This inspection will continue from day to day until completed.

---

[2] Plaintiff contends that Defendant adjusted two of the claims, including the 10/7/18 roof water intrusion claim at issue while the other two claims were submitted to PURE. (Doc. 88, at 2.) Plaintiff also contends that the PURE claims were "plumbing related claims" that were known by Defendant to involve water intrusion "into different and distinct areas of Plaintiff's residence other than those areas impacted by the 10/7/18 roof related water intrusion claim at issue here, both of which resulted from internal interior plumbing failure casualty events and neither of which involved water intrusion through the roof of Plaintiff's residence[.]" (*Id.*) While the Court notes this distinction, it finds the distinction to be immaterial for purposes of the Court's analysis of this motion.

(*Id.*)  Defendant provided August 11, 14, and 19, 2025, as alternate dates.  (*Id.*)

Thereafter, the parties exchanged correspondence, which included Plaintiff's original objections and demands as to the inspection and Defendant's responses thereto.  On July 16, 2025, following the discovery conference with the Court, Plaintiff served revised objections to the request, which included:  1) Defendant needed to provide 72 hour notice of the identification of the individuals attending the inspection; 2) a timeframe and staggering of the inspections to allow Plaintiff's supervision thereof; 3) a limitation of the inspection to the "areas that are claimed by Plaintiff to have been damaged and remain unsettled (unpaid) by Defendant as a result of the October 7, 2018 water intrusion casualty event at issue in this action"; 4) a limitation of photography or other recording to "within the affected areas"; 5) all media resulting from the inspection to be deemed confidential; 6) Plaintiff would "accompany and supervise all attendees throughout the inspection"; 7) attendees would be required to "wear protective shoe covers, gloves, and face coverings while inside the residence"; 8) "[d]rones, robotic devices, or remote-operated inspection tools" would be prohibited absent advance approval in writing from Plaintiff; 9) an agreement that the inspection would be "non-invasive and non-destructive'; and 10) the advance provision of certificates of insurance and an agreement that Defendant attendees would assume all risk.  (Doc. 73-1.)  Plaintiff provided alternate dates of August 15, 22, and 29, 2025.[3]

In its motion, Defendant stated that it "expects that its experts can mostly comply with" conditions "regarding personal protective equipment [7], authorization for destructive testing [9], and providing certificates of insurance [10]," although Defendant "foresees practical difficulties with

---

[3] As an initial matter, Defendant contends Plaintiff failed to properly identify these "parameters" as objections "consistent with this Court's routine discovery practice … ."  (Doc. 73, at 3.)  Defendant argues that this failure "justifies summarily overruling some or all" of Plaintiff's parameters.  (*Id.* (citing *Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 621 (D. Kan. 2005).  The Court declines to resolve the present motion on a technical issue but will instead analyze the merits of the parties' substantive positions.

3

Plaintiff's administration of these conditions." Based on this assertion, the Court deems these three limitations to not be at issue herein.[4] The Court's analysis will address the other seven issues.

## ANALYSIS

**I.    Legal Standard for Discovery and Motions to Compel an Inspection.**

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018). *See also E.E.O.C. v. BNSF Rwy. Co.*, No. 12-2634-JWL, 2014 WL 172141, at *2 (D. Kan. Jan. 15, 2014) (applying this standard to requests for inspection under Fed. R. Civ. P. 34).

The scope of discovery is broad, but not unlimited. Even so, "[u]nless a discovery request is facially objectionable, the party resisting discovery has the burden to support its objections." *Ezfauxdecor, LLC v. Smith*, No. 15-9140-CM-KGG, 2017 WL 2721489, at *2 (D. Kan. June 23, 2017) (citing *Sonnino v. University of Kansas Hosp. Auth.*, 221 F.R.D. 661, n.36 (D. Kan. 2004) (citation omitted)).

Inspections of real property are governed by Fed. R. Civ. P. 34, which states that a party may serve another party with a request "to permit entry onto designated land or other property possessed

---

[4] The Court notes that Defendant has provided no explanation or discussion as to any such "practical difficulties" regarding compliance with these conditions. As such, the Court will not address this further. The Court does, however, instruct Defendant to comply with these conditions.

or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2). A request for an inspection must "describe with reasonable particularity each item or category of items to be inspected" and "specify a reasonable time, place, and manner for the inspection and for performing the related acts." Fed. R. Civ. P. 34(b)(1)(A), (B).

Motions to compel discovery are governed by Fed. R. Civ. P. 37. Pursuant to subsection (a)(3)(B) of that Rule, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." If the parties disagree as to the inspection, the court must weigh "the degree to which the proposed inspection will aid in the search for truth" versus the "burdens and dangers created by the inspection." *Morris v. Cabelas*, No. 10-2559-EFM-GLR, 2011 WL 2516904, at *1 (D. Kan. June 23, 2011) (citing *Welzel v. Bernstein*, 233 F.R.D. 185, 186 (D.D.C. 2005) (internal quotations omitted). The decision as to permit a Rule 34 inspection is within the discretion of the court. *Id.*

There are, however, limits as to the right to conduct a Rule 34 inspection. *McDonald v. Kellogg Co.*, 08-2473-JWL-JPO, 2011 WL 484191, at *2 (D.Kan. Feb. 7, 2011) (internal citation omitted). The court, in its discretion, may limit the inspection upon a determination that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information ...; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit." *Lykins v. CertainTeed Corp.*, No. 11-2133-JTM-DJW, 2011 WL 6337631, at *5 (D. Kan. Dec. 19, 2011) (quoting Fed.R.Civ.P. 26(b)(2)(C)). "Where the burdens and dangers that would accompany a proposed study outweigh the degree to which the proposed study will aid in the search for the truth, the study should not be permitted." *Id.* (citing *McDonald*, 2011 WL 484191, at *2). When a party attempts to resist or limit an inspection, it is required to establish a

"particularized showing of undue burden or danger" rather than "conclusory, unsubstantiated assertions regarding the burdens and safety risks an inspection involves." *Id.* at *6; *see also McDonald*, 2011 WL 484191, at *2-3.

## II.  Disputed Limitations on Inspection.

Based on the representations in Defendant's motion, the following of Plaintiff's proposed limitations remain at issue:  1) 72 hour notice of the identification of the individuals at the inspection; 2) proposed timeframe and staggering of the inspections; 3) limitation to the "areas that are claimed by Plaintiff to have been damaged and remain unsettled (unpaid) from the October 7, 2018, water intrusion event; 4) photography or recording limited to "the affected areas"; 5) confidentiality of all resulting media; 6) allowing Plaintiff to accompany and supervise the inspection; and 8) a prohibition on "[d]rones, robotic devices, or remote-operated inspection tools without advance approval in writing.  The Court will address these in turn.

### A.  Accompanying/Supervising Attendees (condition 6).

The Court will first address Plaintiff's sixth demand as it impacts several of the other demands discussed below.  Therein, Plaintiff demands that he be allowed to accompany and supervise all attendees of the inspection, expressly banning "[u]naccompanied movement."  (Doc. 73-1, at 3.)  The Court finds this demand to be patently unreasonable.

Relying on a case from the Middle District of Florida, Defendant argues that Plaintiff has no right to "condition every aspect of the inspection upon his supervision." (Doc. 73, at 5 (citing *Powers v. Hartford Ins. Co. of the Midwest*, No. 10-1279-T-AEP, 2010 WL 11508159, at *1–2 (M.D. Fla. Nov. 2, 2010)).  In *Powers*, in an effort to address the plaintiff's privacy concerns, the court held that the plaintiff would be allowed to have "a representative present at the residence during the inspection," although the representative was not allowed to "observe the inspection." 2010 WL 11508159, at *2.  Defendant advances a similar solution here, asserting that "while Plaintiff may have a representative

6

present during the inspection … he does not have a right to observe and supervise [Defendant's] inspection, let alone condition every aspect of the inspection upon his supervision." (Doc. 73, at 4-5.)

While the Court is not inherently bound by precedent from other Districts, particularly those as far afield as Florida, it finds the decision in *Powers* to be both persuasive and commonsensical. Further, in his response to the present motion, Plaintiff herein does not address the *Powers* ruling or Defendant's analysis thereof. Rather, Plaintiff simply contends his "proposed guardrails" for the inspection(s), including the "[s]upervised access of participants by Plaintiff," are "both reasonable and necessary to protect the Sexton residence from harm or damage, to respect the privacy of the Plaintiff and his family and to also protect the health, welfare, safety and security of the Plaintiff and his family." (Doc. 77, at 6, 7.)

During the pre-motion telephone conference on this issue, the Court indicated that it would be inclined to allow Plaintiff to attend the inspection. The Court reminds the parties that discussion during the telephone conferences is nonbinding. Given the contentious history of this litigation as well as the parties' inability to agree to the scope of the inspection(s), the Court anticipates a series of on-going disagreements should Plaintiff be allowed to attend and supervise every aspect of the inspection(s). Further, the Court has significant concerns that allowing Plaintiff to personally "supervise" the inspections would inhibit – if not prohibit – the inspector(s) from completing the necessary tasks.

As such, Plaintiff is prohibited from being in the residence or on the relevant property during the inspection(s). Rather, only Plaintiff's counsel may be present at the residence on behalf of Plaintiff. Plaintiff's counsel may observe the inspection(s) to ensure that they are conducted in accordance with this Order. As a corollary matter, while defense counsel will be permitted at the inspection (along with the inspectors), no other representative of Defendant will attend, supervise,

or participate in the inspection(s).  Plaintiff's objections are **overruled** and this portion of Defendant's motion is **GRANTED**.

### B. 72 Hour Notice of Identification of Individuals at Inspection (condition 1).

Plaintiff's first objection demands that "Defendant shall provide Plaintiff, at least seventy-two (72) hours in advance of the inspection, the names, roles, and backgrounds of all individuals attending the inspection."  (Doc. 73-1, at 2.)  Again relying on the *Powers* case from the Middle District of Florida, Defendant argues the 72 hour advance identification is "improper expert and non-expert discovery in an insurance coverage dispute involving property damage to a residence." (Doc. 73, at 4 (citing *Powers*, 2010 WL 11508159, at *1–2).)

The plaintiff in *Powers* attempted to condition inspection of the subject property on defendant providing "the identity of the general contractor that will accompany [d]efendant's adjuster and attorney at the inspection."  *Id.*, at *1.  The plaintiff also conditioned the inspection on Defendant "specify[ing] whether copies of any expert reports, estimates, and any other reports generated as a result of the inspection will be provided to Plaintiff."  *Id.*  The plaintiff's requested conditions were overruled by the *Powers* court, which held that the defendant was "not required to disclose the identity of the contractor if it will not use him at trial to present evidence, or provide any expert report pursuant to Rule 26(a)(2)(B) if the contractor is not one retained or specially employed to provide expert testimony in the case."  *Id.*, at 2 (citing Fed. R. Civ. P. 26(a)(2).)

The Court reiterates that it is not inherently bound to precedent from other Districts.  Even so, it finds the decision in *Powers* to be persuasive and commonsensical.  Again, Plaintiff's response does not address the *Powers* decision or Defendant's analysis thereof.  Rather, Plaintiff simply contends his "proposed guardrails for Defendant's participant(s) access" to his residence, including the "72 hours advance identification of all participants" are "both reasonable and necessary to protect the Sexton residence from harm or damage, to respect the privacy of the Plaintiff and his

8

family and to also protect the health, welfare, safety and security of the Plaintiff and his family." (Doc. 77, at 6, 7.) The Court fails to see, and Plaintiff does not explain, how the "health, welfare, safety, and security" of his family would be put at risk by this inspection, particularly if they were not at the residence during that time.

When a party attempts to resist or limit an inspection, it is required to establish a "'particularized showing' of undue burden or danger" rather than "conclusory, unsubstantiated assertions regarding the burdens and safety risks an inspection involves." *Lykins*, 2011 WL 6337631, at *6 (quoting Fed.R.Civ.P. 26(b)(2)(C)); *see also McDonald*, 2011 WL 484191, at *2-3. Plaintiff has failed to make this particularized showing.

While there may be certain privacy concerns at issue, the fact remains that Plaintiff chose to initiate this litigation for damages relating to the residence. Defendant's interest in discovery and in inspecting the home clearly outweighs Plaintiff's amorphous privacy concerns. Further, defense counsel, who are officers of the court, have chosen the inspector(s) to provide professional and technical expertise in this case. This acts as a tacit endorsement by defense counsel for the inspector(s) professionalism and alleviates any potential privacy and/or safety concerns. Also, as discussed in Section A., *supra*, counsel for both parties will be present during the inspection(s).

Balancing the interests of the parties within the general scope of discovery recognized in the District of Kansas, the Court finds that Defendant is not required to provide prior notification of the inspector(s) it has chosen. That information will be provided, if relevant and required, in conjunction with Defendant's expert disclosures. Plaintiff's demands are **overruled** and Defendant's motion is **GRANTED** as to this condition.

The Court acknowledges Plaintiff has certain, if not thoroughly described, concerns as to the protection of the residence from harm or damage. (Doc. 77, at 5.) The three conditions to which Defendant previously agreed should adequately safeguard the residence from damage – Defendant's

agreement to "wear protective shoe covers, gloves, and face coverings while inside the residence" (condition 7), that the inspection would be "non-invasive and non-destructive" (condition 9), and to provide in advance certificates of insurance and an agreement that Defendant attendees would assume all risk (condition 10).

### C. Timeframe and Staggering Inspections to Allow Supervision (condition 2).

The next condition Plaintiff advances "[f]or planning purposes, and to insure efficient use of time for all involved," is that Defendant "confirm a precise time frame for the inspection of the roof and other separate areas to be staggered as necessary to allow Plaintiff at all times to supervise the access and inspection by Defendant's attendees not to exceed four (4) in number at any one time for a particular scheduled inspection of a particular area subject to the inspection." (Doc. 73-1, at 2.) As an initial matter, as discussed in Section A, *supra*, the Court prohibits Plaintiff's presence at, supervision of, and participation in the inspection.

The Court anticipates it will be impossible for Defendant and/or its experts to give a "precise time frame" in advance of their inspections. That stated, the Court finds it necessary to set temporal parameters regarding the inspection(s). Thus, Defendant will be allowed a **cumulative total of ten (10) hours for all inspections**. This allotted time may be apportioned and allocated among Defendant's inspectors as Defendant sees fit. The 10 hours of inspections **may occur on the same business day or may be apportioned over 2 days**.

Defendant also asserts that the four-person limit "prevents one of [its] experts from conducting its inspection[.]" (Doc. 73, at 6.) Defendant has not, however, provided any actual explanation as to how a four-person limit (at any one time) would prohibit any of its experts from completing their tasks. As such, the Court finds the limitation of no more than four attendees by Defendant at any one time (not including defense counsel) to be reasonable. Defendant may, however, have representatives of more than one inspector present at any given time as long as the

10

total number of attendees does not exceed four individuals. If Defendant's inspectors overlap, however, their time will be counted separately in regard to the 10 hour time limitation for inspections. Defendant's motion is, thus, **GRANTED in part** and **DENIED in part** as to this condition.

### D. Limitation of Inspection to Areas Plaintiff Claims Damaged by October 7, 2018, Water Intrusion Event (condition 3).

Plaintiff's objections to the request for inspection demanded that "[e]ntry and inspection will be limited to the areas that are claimed by Plaintiff to have been damaged and remain unsettled (unpaid) by Defendant as a result of the October 7, 2018 water intrusion casualty event at issue in this action." (Doc. 73-1, at 2.) Plaintiff argues that the areas of the residence affected in the claims submitted to PURE "are distinct from the areas within the … residence that were affected and the subject of the 10/7/18 rainstorm roof related water intrusion claim underlying this action." (Doc. 77, at 8.)

Defendant contends, however, that limiting the inspection to only those areas damaged in the subject water intrusion event is "improper *per se* because [Plaintiff's] claims and [Defendant's] expected affirmative defenses,[5] including its defense of neglect, implicate the house, all of its water damage, and all of its repairs or the lack thereof." (Doc. 72, at 6.) Defendant continues that "[b]ecause '[t]he instant action is based on a claim for [water] loss at the subject property,' the 'condition of the property is highly relevant to Plaintiff's claim.' " (*Id.* (citing *Powers*, 2010 WL 11508159, at *1).) It further argues that "[p]rior alleged inspections are of no moment." (*Id.*)

> Plaintiff's proposed limitation would prevent [Defendant]] from (1) fully evaluating whether Plaintiff's inadequate repairs (in connection with claims submitted to [Defendant] or Privileged Underwriters

---

[5] Because a Fed. R. Civ. P. Rule 12(b)(6) motion to dismiss is pending before the District Court (Doc. 6), Defendant has not yet answered the Complaint. Thus, no affirmative defenses have been plead by Defendant. Plaintiff complains that "Defendant does not reveal in either its motion or supporting memorandum the defense
it intends to assert that involves the undescribed areas of the Sexton residence within the scope of its intended inspection and testing." (Doc. 77, at 7.) The Court does not, however, find this to be determinative of any of the issues presented in Defendant's motion.

11

>   Reciprocal Exchange ("PURE")) caused or contributed to cause the damage he now claims; or (2) fully assessing whether the damage he claims now was improperly claimed in a prior incident to either [Defendant] or PURE, and the instant claim is in part or in whole an attempt to multiply recovery.

(*Id.*, at 6-7.)

Defendant has not established that unfettered access to the interior of the residence is relevant, necessary, or proportional to the needs of the case. The Court **sustains** Plaintiff's objection and **DENIES** this portion of Defendant's motion.

It is not clear to the Court, however, from the parties' briefing exactly which areas of residence are at issue.[6] The Court reminds the parties that it is Plaintiff's burden of proof as to which areas have been affected. The Court thus limits entry and inspection(s) of the residence and property to whichever interior portions of the home "are claimed by Plaintiff to have been damaged and remain unsettled (unpaid) by Defendant as a result of the October 7, 2018 water intrusion casualty event at issue in this action" as described in the Complaint (Doc. 1) and the relevant insurance claim. The Court cautions Plaintiff, however, that if he refuses to allow certain areas to be inspected, he ultimately may be precluded from seeking damages as to such areas. Further, the inspection(s) will not be limited to specific portions of the roof of the residence. Rather, the inspection(s) may encompass the roof of the residence in its entirety.

### E. Photography or Recording Limited to "the Affected Areas" (condition 4).

The next demand Plaintiff has placed on the inspection(s) is the following:

>   Photographs, videos, audio recording and other media may only be taken within the affected areas and shall not include hallways, transit areas, artwork, valuables, unrelated personal effects, or persons not within the affected areas. No photographs, video or recording of

---

[6] The Vertex Cause and Origin Report, which is Exhibit 1 to Plaintiff's response brief, identifies the rooms Plaintiff reported as damaged by the October 7, 2018, water intrusion event. (Doc. 77-1 at 5.) Defendant contends, however, that Plaintiff claims damage to rooms that are not included in that report. (Doc. 81, at n.3.) Further, Defendant is concerned that Plaintiff's condition states that Defendant "is not allowed to inspect any hallways despite a hallway making the list in the Vertex Report." (*Id.* (comparing Doc. 77-1 at p. 5 with Doc. 81-1).)

12

> Plaintiff or household members is permitted or of the personal property unless located in damage affected areas of the residence.

(Doc. 73-1, at 2.) As an initial matter, there will be no issue with the second half of this condition – that photographs or recordings are not to be taken of "Plaintiff or household members" as they are specifically <u>prohibited</u> from attending, supervising, or participating in the inspection(s). *See* Section A, *supra*. Thus, no such individuals will be present to be photographed or recorded.

Defendant argues that this parameter "should be overruled consistent with this Court's longstanding discovery practice, recognizing that the existence of an available protective order obviates confidentiality concerns as to any inspection media." (Doc. 73, at 7 (citing *Lykins*, 2011 WL 6337631, at *6).) The Court finds Defendant's reliance on *Lykins* in this instance to be inapposite as that case involved the potential inspection of a 64 acre water treatment plant, while the inspecting party agreed to "reasonably" limit the inspection "to areas with some relevancy to Plaintiff's allegations" in that case. 2011 WL 6337631, at *6. That holding is not analogous to the situation presented or to the parties' respective positions herein.

Regardless, the Court finds the first portion of Plaintiff's objection – to limit photography and/or recording to "affected areas" only and exclude "hallways, transit areas, artwork, valuables, unrelated personal effects" – to be objectively reasonable and proportional to the needs of the case. The Court this limits photography and/or recording to only those areas that are specifically relevant to Plaintiff's claims and Defendant's defenses. Obviously, however, to the extent artwork, valuables, and/or unrelated personal effects are located or displayed in relevant areas, they may be included in any such photography. In addition, as discussed in Section D., *supra*, there may be a dispute as to whether one or more hallways are included in the allegedly damaged areas of the residence. To the extent Plaintiff claims damage to a hallway in the home, Defendant is permitted to conduct an inspection in such area. The Court **sustains** Plaintiff's objection and this portion of Defendant's

13

motion is **DENIED**.  Further, there will be no limitation on photography and/or recording of the exterior of the residence, including the roof in its entirety.

### F.Confidentiality of Resulting Inspection Media (condition 5).

Plaintiff next attempts to demand that "[a]ll photographs, videos and media shall be deemed confidential under the Protective Order and shall not be published, shared, or stored in public or affiliate claim platforms without Court approval or Plaintiff's express written consent." (Doc. 73-1, at 2-3.)  The Court fails to see how this parameter is "reasonable and necessary," as Plaintiff argues, "to protect the … residence from harm or damage, to respect the privacy of the Plaintiff and his family and to also protect the health, welfare, safety and security of the Plaintiff and his family." (Doc. 77, at 7.)  Plaintiff has simply not yet "asserted specific facts which show that [his] interest in maintaining confidentiality" in the resulting media "outweighs the public interest in disclosure." *Howard v. Kansas Wesleyan Univ.*, No. 24-4050-KHV, 2025 WL 2106826, at *2 (D. Kan. July 28, 2025). The Court will not make an advisory ruling and proactively apply a confidential designation to such media that has yet to be created.  Plaintiff may, however, attempt to apply the Protective Order entered in this case to address any such privacy or confidentiality concerns as to such media once it has been created in accordance with D. Kan. Rule 5.4.2.  Plaintiff's demand is **overruled, without prejudice,** and Defendant's motion is **GRANTED** in this regard.

### G.No Remote Surveillance Equipment (condition 8).

The final demand at issue is that "[d]rones, robotic devices, or remote-operated inspection tools are prohibited unless specifically requested and approved in writing by Plaintiff in advance." (Doc. 73-1.)  Defendant argues that this demand should be overruled as having "no basis in burden or safety and improperly seeks to control how [Defendant's] experts gather information." (Doc. 73, at 7.)  Plaintiff's response does not discuss this demand specifically.  Instead, Plaintiff again relies on his general argument that "defining the areas of inspection and these guardrails are both reasonable

14

and necessary to protect the Sexton residence from harm or damage, to respect the privacy of the Plaintiff and his family and to also protect the health, welfare, safety and security of the Plaintiff and his family." (Doc. 77, at 7.)

Simply stated, Plaintiff has wholly failed to support this objection. In weighing "the degree to which the proposed inspection will aid in the search for truth" versus the "burdens and dangers created by the inspection," the Court clearly finds that the search for truth outweighs any amorphous burdens or dangers alluded to by Plaintiff. *Morris*, 2011 WL 2516904, at *1 (citation omitted). There is no discussion by Plaintiff as to how remote surveillance equipment would subject the residence to "harm or damage" or unfairly impact the "privacy of Plaintiff and his family." To the extent Plaintiff has privacy concerns regarding the resulting media created by any remote surveillance equipment, Plaintiff is free to attempt to employ the provisions of the Protective Order entered in this case.

The Court also sees no way in which the use of remote surveillance equipment would harm the "health, welfare, safety and security of the Plaintiff and his family." Further, the use of such devices would, most likely, increase the potential safety and security of Defendant's inspector(s). Defendant's experts must be allowed to use the standard and accepted tools of their trade. Plaintiff has failed to establish with specificity how allowing them to do so would be improper or unreasonably harmful. Plaintiff's demand is **overruled** and this portion of Defendant's motion is **GRANTED**.

## III.     Potentially Cumulative or Duplicative Discovery.

Plaintiff finally objects that the discovery at issue is unreasonably cumulative or duplicative. (Doc. 77, at 8.) A court, in its discretion, may limit an inspection upon a determination that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery

15

has had ample opportunity to obtain the information ...; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit." *Lykins*, 2011 WL 6337631, at *5 (quoting Fed.R.Civ.P. 26(b)(2)(C)). In support of these objections, Plaintiff argues that

> Defendant previously had the roof and the affected areas of the … residence inspected on July 7, 2021[,] by two expert forensic engineers of the VERTEX Companies that Defendant retained to determine the "cause and origin" of the damage resulting from the 10/7/2018 rainstorm roof related water intrusion casualty event. Their ensuing VERTEX Cause and Origin Report dated August 11, 2021[,] concluded, and provided findings and opinions, based on a reasonable degree of engineering certainty, that the water intrusion into the residence resulting from the 10/7/18 roof water intrusion casualty event affected certain areas of the … residence.

(Doc. 77, at 8.) Plaintiff continues that "Defendant has conducted five prior inspections, including a 360-degree digital scan on March 30, 2022 … ." (*Id.*)

Defendant responds that even if it "had conducted a litigation inspection of Plaintiff's home, a second inspection to obtain information necessary to its claims or defenses would not be duplicative." (Doc. 81, at 5 (citing *Dolezal v. Starr Homes, LLC*, No. 18-2524-JAR-GEB, 2019 WL 2613096, at *4 (D. Kan. June 26, 2019).) Defendant's reliance on the *Dolezal* decision is misplaced as that case involved a second inspection of a fully-constructed home during litigation when the house was under construction during the pre-litigation inspection. *See* 2019 WL 2613096.

Even so, during the pre-motion telephone conference regarding these issues, the Court specifically stated that the inspection(s) would be allowed regardless of prior, pre-litigation inspections. Nothing in the parties' briefing has changed the Court's position on this. While prior inspections have occurred, the currently requested inspection is not duplicative or cumulative because it is being done at the direction of counsel for the purpose of defending this multi-million dollar lawsuit, rather than being completed at the direction of the insurance company to investigate and evaluate an insurance claim. Plaintiff's objections are **overruled**.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Inspection (Doc. 72) is **GRANTED in part** and **DENIED in part** as more thoroughly set forth herein.

**IT IS FURTHER ORDERED** that these inspection(s) shall occur and be completed within **thirty (30) days** of the date of this Order.  Because this deadline potentially impacts Defendant's expert designation deadline, which in turn would impact other remaining deadlines in the case, the Court will issue revisions to the current Scheduling Order by subsequent Order in this case.

**IT IS SO ORDERED.**

Dated this 10th day of September, 2025, at Wichita, Kansas.

/s/Brooks G. Severson
Brooks G. Severson
U.S. Magistrate Judge