**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

RONALD E. SEXTON,
Plaintiff,
vs.
BANKERS STANDARD INSURANCE COMPANY d/b/a CHUBB,
Defendant.

Case No. 24-2388-TC-BGS

**MEMORANDUM & ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT EXPERT DISCLOSURES**

Now before the Court is Plaintiff's Motion for Leave to Supplement Expert Disclosures. (Doc. 120.) Having reviewed the submissions of the parties, Plaintiff's motion is **DENIED**.

## BACKGROUND

This is a breach of contract/insurance coverage dispute arising from Plaintiff's homeowner's insurance policy with Defendant Bankers Standard Insurance Company ("Defendant" or "BSIC"). When issuing the policy, Defendant determined that the total replacement value of Plaintiff's 12,621 square foot residence was almost $8 million.

In May 2021, Plaintiff reported that on October 7, 2018, his residence suffered a water intrusion through the roof, causing extensive damage ("subject water intrusion"). Defendant has paid a portion of the repair cost under the policy but denies Plaintiff's allegations and claims, denies that there is coverage under the subject homeowner's policy for damages continued to be claimed by Plaintiff, and denies that it has further obligation to pay under the policy. Defendant also asserts that Plaintiff's claims are time-barred by the 5-year contractual limitations period of the subject policy.

Plaintiff has made a total of four water intrusion-related insurance claims relating to his residence. In addition to the subject water intrusion, Defendant had resolved a prior water intrusion claim from Plaintiff in Spring 2018. Plaintiff made another water damage claim with PURE Insurance, based on a December 2019 loss. Finally, Plaintiff made an additional water damage claim with PURE Insurance for a March 2022 loss.[1]

Defendant asserts that contemporaneously, Plaintiff and his contractors have claimed ongoing, post-policy water damage, allegedly from the roof that Plaintiff had been paid to replace in its entirety, in Spring 2019 and May 2020. (Doc. 65, at 1.)

> Faced with four water insurance claims in so many years, [Defendant] served discovery seeking to identify (i) what portions of the residence and Plaintiff's personal property were damaged and when; (ii) what damages were claimed in which insurance claims; and (iii) the supporting documentation for the same.

(*Id.*, at 1-2.) The Court most recently dealt with the parties' disagreements regarding Defendant's request for inspection of Plaintiff's residence. (*See* Memorandum & Order, Doc. 105.)

Plaintiff's present motion seeks leave to supplement his expert disclosures to identify Christoper Leaton as an additional, non-retained expert. (Doc. 120.) The Scheduling Order deadline for Plaintiff to designate experts was August 14, 2025. (Doc. 47, at 1.) The present motion was filed exactly two months past that deadline on October 14, 2025. (Doc. 120.)

Mr. Leaton, the expert at issue, is described by Plaintiff as a "senior forensic engineer" who was commissioned by Defendant to provide an opinion on causation in the related state court case of *Bankers Standard Insurance Company v. Alpha Roofing, LLC*, Case No. 21-5231 (Johnson County Kansas District Court) (the "Johnson County case"). (*Id.*, at 1.) Plaintiff contends that he

---

[1] Plaintiff contends that Defendant adjusted two of the claims, including the 10/7/18 roof water intrusion claim at issue while the other two claims were submitted to PURE. (Doc. 88, at 2.) Plaintiff also contends that the PURE claims were "plumbing related claims" that were known by Defendant to involve water intrusion "into different and distinct areas of Plaintiff's residence other than those areas impacted by the 10/7/18 roof related water intrusion claim at issue here, both of which resulted from internal interior plumbing failure casualty events and neither of which involved water intrusion through the roof of Plaintiff's residence[.]" (*Id.*)

> believed Mr. Leaton's findings and opinions were undisputed. [Defendant] has now suggested it might contest Mr. Leaton's findings and opinions in the case at bar. This would necessitate Plaintiff calling Mr. Leaton as a witness at trial of this matter, so he can explain (and possibly defend) his work. Leave is required to designate Mr. Leaton because the operative Scheduling Order required that all expert disclosures be made by or before August 14, 2025, and although Plaintiff complied with this deadline, his disclosures did not include Mr. Leaton.

(Doc. 120, at 1.) Defendant disputes Plaintiff's characterization, contends Plaintiff was aware of the report at issue (hereinafter referred to as "the VERTEX report"), and argues there is no reasonable basis for Plaintiff to claim surprise as to Defendant's position. (*See generally* Doc. 129.)

## ANALYSIS

### I. Legal Standard.

"When a party seeks to amend the scheduling order to disclose experts out of time, the party must show both good cause and excusable neglect." *McPhaul v. Coll. Hills Opco, LLC*, No. 24-1143-JWB-BGS, 2025 WL 2229971, at *3 (D. Kan. Aug. 5, 2025) (citing *CGB Diversified Servs., Inc. v. Forsythe*, No. 20-2120-TC-TJJ, 2021 WL 672168, at *1 (D. Kan. Feb. 22, 2021)). "Good cause requires a greater showing than excusable neglect," thus "many judges in this District have only applied and analyzed the good cause standard under Fed. R. Civ. P. 16(b)(4) when a party misses their expert witness disclosure deadline." *Id.* (citations omitted). The Court will, however, address both good cause and excusable neglect.

Plaintiff argues he has met both of these requirements. That stated, he contends that even if he is unable to meet the good cause/excusable neglect requirements, "the requested relief is still appropriate" because denying his request "could be dispositive of this case, and lesser curative measures could be imposed to alleviate any prejudice" to Defendant. (Doc. 120, at 3.) The Court will address these issues in turn.

### II. Good Cause.

"A scheduling order 'may be modified only for good cause and with the judge's consent." *McPhaul v. Coll. Hills Opco, LLC*, No. 24-1143-JWB-BGS, 2025 WL 2229971, at *3 (D. Kan. Aug. 5, 2025) (quoting Fed. R. Civ. P. 16(b)(4)). In order to establish good cause, Plaintiff must show that "scheduling order deadlines cannot be met despite the [his] diligent efforts." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988-89 (10th Cir. 2019); Fed.R.Civ.P. 16(b)(4). In other words, Plaintiff is required to provide an adequate explanation for any delay. *Id.*

Plaintiff admits that if he wanted to designate an expert in the present case to address the opinions Leaton expressed in the Johnson County case, "he could have and should have" done so by the August 14, 2025, deadline. (Doc. 120, at 3-4.) That stated, Plaintiff contends he did not do so because "he believed Mr. Leaton's opinions were both undisputed and more reliable than any opinions that might be generated by a new expert inspecting the home a full seven (7) years after the subject water intrusion occurred." (*Id.*) According to Plaintiff, however, if Defendant now intends to contest Leaton's findings, Plaintiff will need to call Leaton as a trial witness "to explain his opinions and the bases for them," thus necessitating the requested leave. (*Id.*)

Plaintiff argues he "could not have known Mr. Leaton's testimony would be required at trial prior to the August 14, 2025, expert deadline" in this case and he still does not know if Leaton's trial testimony will be needed because, as of the filing of the present motion, Defendant's "precise views and intentions regarding Mr. Leaton's work remain unclear because it has not yet filed its Answer or offered any additional expert opinions." (*Id.*) Plaintiff contends however, that his communication with defense counsel indicates Defendant will "take a different approach in this case than what it took in the Johnson County case." (*Id.*)

Even so, Plaintiff asserts that he "should not be penalized for failing to properly anticipate [Defendant's] trial strategy." (*Id.*)

> Plaintiff believed, until recently, that this dispute involved whether and to what extent certain items were damaged within areas of the home

> impacted by the October 2018 storms. He did not understand [Defendant] would contest – as it apparently intends to contest – whether the October 2018 storms impacted those areas of the home. This is surprising because it completely contradicts the position [Defendant] took in the Johnson County case, a case that only resolved in March of this year. [Defendant] was relying on Mr. Leaton's report as recently as seven months ago.

(*Id.*, at 4-5.) Plaintiff thus asserts that good cause exists to allow him to designate Mr. Leaton as a non-retained expert in this matter.

Defendant responds that the desire of Plaintiff's new – and third – counsel[2] to change strategy does not equate to "good cause." (Doc. 129, at 3.) "A change in legal strategy or the errors of past counsel do not equate to due diligence" in the context of establishing good cause or excusable neglect necessary to extend an expired scheduling order deadline. *Lyden v. Hogan Dedicated Servs., LLC*, No. 9289-CM-JPO, 2015 WL 6778941, at *2 (D. Kan. Nov. 16, 2016). Also, courts in this District have been unpersuaded by the substitution of counsel coupled with "generalized scheduling challenges" as a valid basis to request an amendment to a Scheduling Order. *See e.g. MidAmerica Div., Inc. v. First Health Group Corp.*, No. 23-2551-EFM-RES, 2025 WL 958274, at *7 (D. Kan. March 31, 2025). Thus, the Court finds that the choice of Plaintiff's newest and current attorney to name an additional expert does not establish good cause in relation to the requested change to the Scheduling Order.

Defendant next argues that the record does not support Plaintiff's position that "he could not have known whether [Defendant] disagreed that all of his claimed damages in this case arise from the October 2018 water intrusion event at his residence, which Plaintiff styles as a dispute of the VERTEX Report." (Doc. 129, at 3.) According to Defendant, "[t]he differences between

---

[2] The lawsuit was commenced on or about August 28, 2024. At that time, Plaintiff was represented by attorneys at McDowell, Rice, Smith & Buchanan, PC. On April 30, 2025, counsel at McDowell Rice withdrew and substituted counsel, Don Peterson, entered his appearance. (Doc. 36.) On October 3, 2025 – after Plaintiff's expert witness designations were made – Don Peterson withdrew as counsel and current counsel entered their appearance. (Doc. 115.)

Plaintiff's claimed damages and the damages caused by that incident have been the source of discovery litigation for this case's entire lifespan." (*Id.*)

The Court notes numerous times this issue has arisen in the parties' briefing in this case that **predate** Plaintiff's expert deadline – going back as early in the litigation as December 2024 (Docs. 7, 65, 71, 73) – and continuing soon after Plaintiff's expert deadline (Doc. 77, at 3, 8, 10; Doc. 81, at 2-3, n.3.). The Court also acknowledges the consistency of Defendant's position on these issues throughout this litigation, going back to its December 2024 Motion to Dismiss. (Doc. 129, at 4.) Simply stated, the Court is unpersuaded by Plaintiff's argument that he was hamstrung by the uncertainty as to Defendant's position. Establishing good cause "obligates the moving party to provide an adequate explanation for any delay." *Tesone*, 942 F.3d at 988. Plaintiff has failed to do so.

"Courts are more likely to find good cause when the moving party has been generally diligent and the need for additional time was neither foreseeable nor the fault of the moving party." *Jones v. DG Retail, LLC*, 25-2232-JWB-ADM, 2025 WL 3170823 (D. Kan. Nov. 13, 2025) (citing *Tesone*, 942 F. 3d at 989). In this regard, Defendant argues that "Plaintiff cannot show reasonable diligence in either prosecuting this case or otherwise addressing this issue" because "Plaintiff could have served written discovery to explore [Defendant's] anticipated defenses at any time in the past 14 months," but instead waited until the same day the present motion was filed, October 14, 2025, to serve discovery requests on Defendant. (*Id.*, at 4-5; *see also* Docs. 129-2, 129-3, 129-4.) At that time, Plaintiff's current attorney served extensive discovery requests on Defendant,[3] consisting of interrogatories, 58 requests for production, and 94 requests for admission, many of which, according to Defendant, are "directed to [Defendant's] defense theory." (*Id.* (referencing Doc. 129-2, at 4 (Plaintiff's first Interrogatories, No. 2); Doc. 129-3, at 16 (Plaintiff's Requests for Production, No. 37); Doc. 129-4 (Plaintiff's first Requests for Admission).) Defendant argues that "Plaintiff's

[3] The docket reflects that Plaintiff's prior attorneys failed or chose not to serve written discovery on Defendant.

prolonged delays and decisions not 'to proceed with the normal process of discovery,' together with his engagement of new counsel, are the sole reason for his inaccurate claim of surprise, and fail to show good cause." (*Id.*, at 5 (citing *McPhaul*, 2025 WL 2229971, at *3).)

Because Plaintiff chose not to file a reply brief, he has not addressed this argument. The Court notes that although Plaintiff did not serve discovery requests on Defendant until 14 months into this litigation, the discovery requests were served in time for responses to be filed within the February 23, 2026, discovery deadline. (Doc. 114, at 3.) Even so, the Court finds that Plaintiff was not diligent as to this issue because he did not seek relevant discovery in a manner that would have allowed him to meet his August 14, 2025, expert designation deadline. "'Mere failure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation … should not be considered good cause.'" *Tesone*, 942 F.3d at 989 (citing *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 105 (D.D.C. 2005) (quotations omitted)). *See also Ikona v. AHC of Overland Park, LLC*, No. 22-2016-KHV-RES, 2022 WL 4245478, *5 (D. Kan. Sept. 15, 2022) (holding that plaintiff failed to establish good cause to modify the scheduling order when plaintiff's counsel "spent four months engaged in little to no discovery in this case."). As such, Plaintiff cannot establish good cause for his failure to meet his deadline to identify and disclose expert(s) on this subject. Defendant's motion is **GRANTED** for Plaintiff's failure to establish good cause.

**III. Excusable Neglect.**

Because "Plaintiff has not met the 'good cause' standard, the Court need not make a finding as to excusable neglect." *McPhaul*, 2025 WL 2229971, at *6 (citing *White Way, Inc. v. Firemen's Ins. Co. of Washington, D.C.*, No. 22-2195-KHV-RES, 2022 WL 17177371, at *3 n.3 (D. Kan. Nov. 23, 2022). Even so, the Court will address the issue of excusable neglect on its substantive merits.

The concept of excusable neglect is "somewhat elastic" and "is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Coleman v. Blue Cross Blue*

*Shield of Kan.*, 487 F Supp. 2d 1225, 1234 (D. Kan. 2007) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 391–92, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)). The determination as to whether a party has established excusable neglect is an equitable one what must consider "all relevant circumstances" relating to the party's omission including: "(1) the danger of prejudice; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reasons for the delay which includes whether it was within the reasonable control of the party seeking to show excusable neglect; and (4) whether that party acted in good faith." *Id.*, at 1234-35 (citations omitted). The Court "look[s] to the entire circumstances of the case, but fault in the delay remains a very important factor." *Id.* (citing *Dryden v. City of Hays*, No. 11-1354-KGS, 2012 WL 2993914, at *2 (D. Kan. July 20, 2012)). Each of these factors will be addressed in turn.

**A. Prejudice.**

Plaintiff argues that consideration of the above-enumerated factors "strongly supports allowing the relief sought" in his motion. The first of these factors is prejudice. *Id.*

> There is absolutely no prejudice to [Defendant] from allowing Plaintiff to designate Mr. Leaton as a nonretained expert as this matter. Mr. Leaton was [Defendant's] expert in the Johnson County case and [Defendant] has been in possession of his report for years. Plaintiff will not be asking Mr. Leaton to provide any new opinions in the case at bar, but rather, will be asking him to explain – and possibly defend – the opinions he gave in the Johnson County case at [Defendant's] behest.

(Doc. 120, at 5.)

Defendant counters that it has been prejudiced by "Plaintiff's change in tactics[.]" (Doc. 129, at 6.) Defendant notes that Plaintiff already has already designated Clark Scherfenberg as his causation expert in this case. Scherfenberg was designated to:

> present evidence relating to the origin and cause of damage to areas of the Sexton residence . . . caused from the October 7, 2018[,] roof related water intrusion casualty event, [including evidence related to] the severity of the . . . event and the timeframe relating to the damage to areas in the interior . . . from the day of the event and going forward.

(Doc. 129-1, Plaintiff's Expert Disclosures, at 2.) According to Defendant, "Plaintiff's new counsel just wants to take a second bite at the apple" because "he knows he cannot designate an expert in rebuttal that should have been designated as part of his case-in-chief." (Doc. 129, at 6.) As discussed above, choices of past counsel or the substitution of counsel do not necessarily equate to a finding of excusable neglect. *Lyden*, 2015 WL 6778941, at *2; *MidAmerica Div., Inc.*, 2025 WL 958274, at *7. Thus, the fact that Plaintiff's newest and current attorney wishes to change legal strategies in the case does not establish excusable neglect or outweigh the potential prejudicial impact on Defendant.

Defendant also points to the "copious amounts of time fighting for an inspection and coordinating scope and parameters with its experts" to establish prejudice and show that "Plaintiff keeps trying to change the landscape and force [Defendant] to reevaluate time and again.. (Doc. 129, at 6.) The undersigned Magistrate Judge notes the numerous discovery telephone conferences with the parties as well as rulings on upon multiple motions regarding discovery, inspection, and scheduling issues in this case (*see e.g.* Docs. 44, 56, 60, 61, 75, 105, 112, 113) with yet an additional in-person hearing on a discovery issue relating to the inspection of Plaintiff's attic scheduled for next month (Doc. 132). The Court finds that the prejudice to Defendant that would be caused by allowing the requested relief weighs against a finding of excusable neglect.

**B. Length of Delay.**

The next consideration is the length of delay and potential impact on these proceedings. *Coleman*, 487 F Supp. 2d at 1234-35. Plaintiff contends this is a non-factor because he is only

> two months past the deadline for designating Mr. Leaton as a non-retained expert but designating him now will not impact these proceedings at all. [Defendant] still has two months to designate its own experts, should it wish to have its experts address the opinions of Mr. Leaton. Fact discovery does not close for over four months. Dispositive motions are not due for over seven months. In short, there is plenty of time for [Defendant] to do whatever it believes it

> needs to do in response to Plaintiff identifying [Defendant's] retained expert in the Johnson County case as a non-retained expert in this case.

(Doc. 120, at 5-6.)

Defendant responds that the impact of Plaintiff's length of delay and neglect are "substantial." (Doc. 129, at 7.) According to Defendant, the delay is not the two months indicated by Plaintiff, but rather the 14 months as Plaintiff waited to serve "any written discovery and failed to designate Mr. Leaton long after months' worth of discovery briefing, conferences, and correspondence occasioned by whether the VERTEX Report accounted for post-policy water claims and whether the damage he seeks in this lawsuit is truly part of the October 2018 incident." (*Id.*) Defendant continues that "[e]xperts have already been prepared, discovery resolutions reached, and depositions taken based upon Plaintiff's existing disclosures." (*Id.*)

As stated above, although Plaintiff did not serve discovery requests on Defendant until 14 months into this litigation, the discovery requests were technically timely in relation to the February 23, 2026, discovery deadline. (Doc. 114, at 3.) Regardless, the Court finds that Plaintiff could and should have explored Defendant's anticipated defenses in a manner that would have allowed Plaintiff to meet his expert designation deadline. Instead, Plaintiff chose not to serve discovery related to Defendant's defenses until the same day he filed the present motion – exactly two months after his expert designation deadline. This delay is sufficiently significant under the circumstances to find that this factor – the length of Plaintiff's delay – weighs against a finding of excusable neglect. *See Ikona*, 2022 WL 4245478, *5 (D. Kan. Sept. 15, 2022) (holding that plaintiff failed to establish good cause to modify the scheduling order when plaintiff's counsel "spent four months engaged in little to no discovery in this case.").

**C. Reasons for Delay.**

As to the third factor, Plaintiff concedes that he was in control of the decision to designate Leaton as an expert in a timely manner, but "the need to [do so] was and remains outside Plaintiff's

control" as this decision was "wholly dependent on [Defendant's] trial strategy and its apparent decision to take a different position in this case than it took in the recently-resolved Johnson County case." (Doc. 120, at 6.) Defendant, however, argues that Plaintiff's delay is "unreasonable, and his failure to act was solely within his control." (Doc. 129, at 7.) Defendant continues that

> [w]hile Plaintiff's newest counsel may be unfamiliar with this case's history and the parties' disputes, Plaintiff's prior counsel were not. Indeed, any suggestion that 'Plaintiff believed, until recently,' that there was no disagreement between his claimed cause and damages and the scope of the VERTEX Report is simply false. … Prior counsel participated in discovery conferences, correspondence, and motions practice discussing these issues more than a month before expert disclosures were due, demonstrated full knowledge of these issues in briefing, and made a strategic decision not to designate Mr. Leaton as an expert witness. Presumably, Plaintiff's newest counsel intends to prepare differently for trial and re-do Plaintiff's expert disclosures in connection with serving written discovery for the first time in 14 months, but that does not create excusable neglect.

(*Id.*)

As discussed above, this issue has arisen numerous times in this case **predating** Plaintiff's expert deadline – going back as early in the litigation as December 2024 (Docs. 7, 65, 71, 73) – as well continuing soon after Plaintiff's expert deadline (Doc. 77, at 3, 8, 10; Doc. 81, at 2-3, n.3.). Defendant's position on these issues has been consistent throughout this litigation, going back to its December 2024 Motion to Dismiss. (Doc. 129, at 4.) Establishing good cause "obligates the moving party to provide an adequate explanation for any delay." *Tesone*, 942 F.3d at 988. Plaintiff's argument that the delay was caused by supposed uncertainty as to Defendant's position is unpersuasive. The reasons for the delay were clearly within Plaintiff's control – and were not caused by Defendant's nonexistent change of position. Therefore, Plaintiff is unable to establish excusable neglect.

**D. Good Faith.**

The final consideration is whether Plaintiff acted in good faith, which he argues "should be beyond dispute." (Doc. 120, at 6.) Plaintiff states he "is not seeking to surprise or prejudice [Defendant] by belatedly naming" an unfamiliar expert, but is merely "seeking to ensure that the same findings and opinions that underpinned the resolution of the Johnson County case can be used" herein. (*Id.*) Defendant raises the possibility that Plaintiff's current attorney is unaware of the parties historical disagreements about "timing, causation, and damages … ." (Doc. 129, at 7.) Defendant correctly points out that the VERTEX Report was generated in August 2021 "and the parties have fought over what damages are and are not in that Report or in this case for the better part of a year despite Plaintiff's attempt to claim this issue is novel or to conflate the issues in this litigation with" the Johnson County case. (*Id.*, at 7-8.)

While the Court does not specifically find that Plaintiff acted in bad faith *per se*, it cannot find that this factor weighs in favor of Plaintiff establishing excusable neglect. Considering all the factors as a whole, Plaintiff is unable to establish excusable neglect for his failure to meet his expert designation deadline.

## IV. Potentially Dispositive Nature of Denial.

Finally, Plaintiff argues that "even if the Court finds [good cause and excusable neglect] have not been met, it should still grant the requested relief because the failure to do so could be dispositive of this case, and lesser curative measures could be imposed to alleviate any prejudice to [Defendant]." (Doc. 120, at 3.) Plaintiff is correct that the absence of good cause or excusable neglect "does not necessarily warrant" denial of the requested relief. (*Id.*, at 6.) When denial of the request to extend the Scheduling Order would potentially exclude dispositive evidence, such as an expert report, the request "is subject to more careful scrutiny" and the consideration of lesser curative measures. *McPhaul*, 2025 WL 2229971, at *7 (citing *HGG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1203 (10th Cir. 2017)). When denial of the requested extension

would be dispositive, the Court must consider: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. *Id.* (quoting *HCG Platinum*, 873 F.3d at 1200).

Plaintiff largely relies on the supposed lack of prejudice to Defendant because the expert in question, Mr. Leaton, is Defendant's own expert from the Johnson County litigation. (Doc. 120, at 7.) Plaintiff continues that "by no stretch of the imagination did [he] act in bad faith by delaying his designation of Mr. Leaton as a witness" because the delay "was the result of a disconnect between the actual issues in dispute and what Plaintiff believed were the issues in dispute." (*Id.*)

Defendant counters that the rejection of Plaintiff's requested expert supplementation is "neither unduly harsh nor dispositive of his case." (Doc. 129, at 9.) The Court notes that Plaintiff has already disclosed Clark Scherfenberg as an expert on the subjects of cause and origin. (*See* Doc. 129-1.) Defendant argues that "[d]enying Plaintiff's motion does not leave Plaintiff without a designated cause and origin expert, but instead excludes the ***new expert preferred by Plaintiff's latest counsel***." (Doc. 129, at 9 (emphasis in original).) The Court agrees.

It is true that the Court is to consider lesser sanctions "[i]f denying a request to amend the scheduling order would result in the exclusion of evidence that would be dispositive, such as experts … ." *McPhaul*, 2025 WL 2229971, at *7; *HCG Platinum, LLC*, 873 F.3d at 1203. While Plaintiff argues that prohibiting him from designating Leaton as an expert would be dispositive of his claims, his motion does not support this assumption in any substantive way. Rather, Plaintiff merely focuses on the alleged lack of prejudice to Defendant and the nonexistent "disconnect between the actual issues in dispute and what Plaintiff believed were the issues in dispute," as discussed above. (Doc. 120, at 7.) Neither of these arguments prove that the denial of the present motion would be dispositive to Plaintiff's claims. As such, Plaintiff's motion (Doc. 120) is **DENIED**.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to Supplement Expert Disclosures (Doc. 120) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 26th day of November, 2025, at Wichita, Kansas.

/s/Brooks G. Severson
Brooks G. Severson
U.S. Magistrate Judge