**In the United States District Court
for the District of Kansas**

———————

Case No. 24-cv-02388-TC

———————

RONALD E. SEXTON,

*Plaintiff*

v.

BANKERS STANDARD INSURANCE COMPANY,

*Defendant*

———————

**MEMORANDUM AND ORDER**

Plaintiff Ronald E. Sexton brought this suit against his insurer, Bankers Standard Insurance Company, to recover expenses he incurred after a rainstorm damaged his residence and contents within it. Doc. 1. Bankers moved to dismiss. Doc. 6. For the following reasons, its motion is denied.

**I**

**A**

A federal district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 589 U.S. 327, 332 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**B**

This insurance dispute arises from a homeowner's policy that the Plaintiff, Ronald Sexton, purchased from Bankers Standard Insurance Company for a one-year period starting in February 2018. *See* Doc. 1 at ¶ 6.[1] In particular, Sexton claims that Bankers breached promises contained in the insurance policy by failing to cover water damage to Sexton's property and expenses related to the necessary repairs, such as temporary living costs and the installation of prevention measures to prevent future water damage to the residence. *See id.* at ¶¶ 24–33. Bankers, however, seeks dismissal on timeliness grounds, so only one provision of the policy is relevant to the current dispute. *See generally* Doc. 6. That provision, which limits the amount of time in which Sexton may sue Bankers under the policy, states: "No action can be brought against us unless . . . the action is started within five years after the date of loss." Doc. 1-1 at 78. Accordingly, the facts described in this section are limited to those relevant to whether Sexton timely filed his claim and/or whether an exception to Bankers' timeliness defense applies.

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

On October 7, 2018, a severe rainstorm substantially damaged the interior of Sexton's residence. Doc. 1 at ¶¶ 8, 16. Water entered through the roof, which was in the process of being constructed by the company Alpha Roofing. *Id.* at ¶ 16. Sexton initially attempted to seek compensation for the water damage to his residence from Alpha Roofing, but the company declined to pay. *Id.* at ¶¶ 17–19. Accordingly, Sexton sued Alpha Roofing, *id.* at ¶ 19, and he filed an insurance claim with Bankers, seeking coverage for the water damage in his residence. *Id.* at ¶ 18. Bankers joined Sexton in suing Alpha Roofing, and Bankers covered some of Sexton's costs related to the water damage. *Id.* at ¶ 20.

Sexton claims that the policy required Bankers to cover more expenses than what it paid him. *See, e.g.*, Doc. 1 at ¶ 35. For example, Sexton alleges that Bankers should have covered the expenses necessary to repair his residence and the contents within it with "material of like kind and quality." *Id.* at ¶¶ 24–31. He also states that he was unable to live in his residence while certain repairs were conducted, and that Bankers was required to pay for the expenses Sexton incurred during that time. *Id.* at ¶ 38. And Sexton alleges that his insurance policy required Bankers to compensate him for actions he took to prevent the same or similar damage in the future—e.g., expenses related to purchasing and installing mold-mitigation and leak-detection systems for the residence. *Id.* at ¶¶ 40–46.

Bankers disagreed. It denied Sexton's claim and refused to cover any more expenses related to the rainstorm damage than what it had already paid. Doc. 1 at ¶ 63. Sexton received the denial letter from Bankers on February 9, 2024—five years and four months after the rainstorm occurred, which meant Sexton's five-year time period to bring legal action against Bankers had passed. *See id.*

Sexton identifies reasons why Bankers should not be able to insist on its limitation provision. For at least three years leading up to Bankers' denial of Sexton's claim, Sexton and Bankers frequently communicated regarding the water damage to Sexton's residence. *See* Doc. 1 at 6–8. In particular, Bankers' agents made several statements to Sexton indicating that Bankers intended to cover additional expenses related to the water damage in Sexton's residence. *See id.* For example, when Bankers filed suit against Alpha Roofing, it stated that it "has paid, *and will pay*, money to and on behalf of Sexton for damage to Sexton's Residence and his personal property." *Id.* at ¶ 21 (emphasis in original). And four years after the rainstorm, in April 2022, Bankers sent a letter to Sexton that stated: "Your policy *is providing coverage* for

3

the sudden and accidental interior water damages which occurred on October 7, 2018." *Id.* at ¶ 23 (emphasis in original). Sexton also points to letters or emails that Bankers sent him in January 2022, April 2022, and May 2023, stating that it planned to provide coverage for the expenses Sexton incurred while he was unable to live in his residence. *Id.* at ¶¶ 35–37.

Bankers also took various steps to determine the extent and cost of the water damage to Sexton's residence. *See, e.g.*, Doc. 1 at ¶ 49. For example, Bankers asked Sexton to obtain five separate inspections of his residence to determine what repairs needed to be completed as a result of the water damage. *Id.* at ¶ 66. Those inspections occurred in 2021, 2022, and 2023. *Id.* at ¶ 52. Sexton paid out-of-pocket for at least two of Bankers' requests for additional inspections or reports, which Bankers' agent informed him would be reimbursed. *Id.* at ¶ 49. Bankers did not ultimately reimburse Sexton for those costs. *Id.* Throughout this time, Sexton also provided various documentation to Bankers upon request. *See, e.g.*, *id.* at ¶ 54. Bankers would often respond to Sexton informing him that it had not yet accepted or rejected his claim but that it needed more information to determine what expenses it could cover. Doc. 1 at ¶¶ 57–59. Specifically, Bankers communicated to Sexton that its processing of his claim was ongoing on at least three occasions: in February, June, and July of 2023. *Id.*

A few weeks before the five-year deadline for Sexton to bring legal action against Bankers under the policy, Bankers updated Sexton on the status of his claim. Specifically, Bankers informed Sexton that it had "completed [its] review of all pertinent information." Doc. 1 at ¶ 60. And Bankers asked Sexton to submit to an examination under oath. *Id.* Bankers delayed the scheduling of Sexton's examination, so it did not occur before the five-year deadline for Sexton to sue Bankers, which was October 7, 2023. *Id.* at ¶ 62. Instead, it occurred in December 2023. *Id.* In February 2024, two months after Sexton's examination, Bankers denied his claim. *Id.* at ¶ 63. The letter further stated:

> We would also like to invite you, should you have any other information you would like us to consider or which you otherwise believe might bear on our coverage determination, to please bring it to our attention at your earliest convenience. We are happy to consider any further information in support of your claim.

*Id.*

In August 2024, Sexton filed this breach-of-contract action against Bankers. Doc. 1. Sexton asserts that Bankers breached its promise to cover certain damages and expenses related to the water damage in Sexton's residence. *Id.* Bankers moved to dismiss, arguing that the contract's five-year limitation period bars Sexton's claim. Doc. 7.

## II

Sexton's Complaint, on its face, shows that he filed his breach-of-contract claim against Bankers more than five years after the date of the water damage. But Sexton has alleged facts suggesting that Bankers, through its statements and conduct, led Sexton to believe that his claim would be resolved without the need to file a lawsuit. As a result, Bankers' motion to dismiss is denied.

### A

Bankers contends that Sexton's breach-of-contract claim is time-barred by the policy's five-year limitation period. Doc. 7 at 4–5. Under Kansas law, parties to an insurance contract may agree to the appropriate time in which to bring an action, regardless of the applicable statute of limitations. *Pfeifer v. Fed. Express Corp.*, 304 P.3d 1226, 1230 (Kan. 2013).[2] The Complaint, on its face, makes clear that Sexton did not file his suit until August 2024, six years after the damage related to the rainstorm occurred. Doc. 1; *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (explaining that a claim should only be dismissed as untimely on a Rule 12(b)(6) motion when it is clear on the face of the complaint that the claims are time barred). All parties agree that the suit was beyond the time limit imposed by the insurance contract. Doc. 7 at 3; Doc. 13 at 4. As a result, Sexton's suit was untimely unless he plausibly alleged facts supporting an exception to the general rule under Kansas law that a contractual limitation period, like the one

---

[2] The parties agree that Kansas law governs this dispute. A federal court sitting in diversity must "apply the substantive law of the forum state." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 (10th Cir. 2014). That law arises from state statute and decisions of a state's highest court. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

5

Bankers invokes, is enforceable.[3] *See Pfeifer*, 304 P.3d at 1234 (holding that the contractual limitation period was invalid on public policy grounds because it impermissibly infringed on Pfeifer's right to bring a retaliatory discharge claim under the Workers Compensation Act).

Sexton attempts to overcome Bankers' timeliness defense through the doctrine of equitable estoppel. Doc. 13 at 4. In Kansas, a party attempting to invoke equitable estoppel typically "must show that another party, 'by its acts, representations, admissions, or silence when it had a duty to speak, induced [the first party] to believe certain facts existed,' and also that the first party 'rightfully relied and acted upon such belief.'" *Liberty Mut. Fire Ins. Co. v. Woolman*, 913 F.3d 977, 994 (10th Cir. 2019) (quoting *Mut. Life Ins. Co. of N.Y. v. Bernasek*, 682 P.2d 667, 730 (Kan. 1984)) (alterations in original). In the context of a statute of limitations defense, equitable estoppel serves to preclude a defendant from relying on the defense when the defendant "has acted in such a fashion that his conduct is sufficient to lull his adversary into a false sense of security forestalling the filing of suit until after the statute [of limitations] has run." *Bell v. City of Topeka, Kan.*, 279 F. App'x 689, 693 (10th Cir. 2008) (quoting *Coffey v. Stephens*, 599 P.2d 310, 312 (Kan. Ct. App. 1979)).

The Kansas Supreme Court has never considered whether equitable estoppel, which it frequently applies in the statute of limitations context, also applies to contractual limitation periods like the one in Sexton's insurance policy. That means it is necessary to predict whether the Kansas Supreme Court would recognize Sexton's theory of equitable estoppel in this circumstance. *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007) (noting that federal courts faced with an unanswered question of state law must predict what the state

---

[3] There are Kansas Supreme Court cases holding that parties cannot contractually shorten the generally applicable statute of limitations for an action. *See, e.g.*, *Erickson v. Ord. of United Com. Travelers of Am.*, 176 P. 989 (Kan. 1918); *Kan. Free Fair Ass'n v. Ga. Cas. Co.*, 190 P. 592 (Kan. 1920). But the law has changed: Those decisions are based on a now-repealed 1897 statute that prohibited the contractual shortening of statutory limitations periods. *See Pfeifer*, 304 P.3d at 1230. As a result, the Kansas Supreme Court now recognizes that parties may contractually restricting their limitations periods and that freedom-of-contract principles favor enforcing such agreements. *Pfeifer*, 304 P.3d at 1230–31; *accord Frost v. ADT, LLC*, 947 F.3d 1261, 1269–71 (10th Cir. 2020).

supreme court would do). This process requires a federal court predicting what the state supreme court would do to "seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and 'the general weight and trend of authority' in the relevant area of law." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007) (internal citations omitted); *see also Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 851 (10th Cir. 2015) (examining persuasive authorities to predict whether a state supreme court would recognize an estoppel theory that it had not yet applied).

There are several reasons to believe that the Kansas Supreme Court would extend its estoppel doctrine to contractual limitation periods. Perhaps the strongest is that the general weight and trend of authority suggest that a defendant insurer may be precluded from relying on a contractual limitation period where the insurer's statements or conduct evidence either an admission or recognition of liability or an intention to reach a settlement without suit. *See, e.g.*, *Thompson v. Phenix Ins. Co.*, 136 U.S. 287, 299 (1890); *Reynolds v. Detroit Fid. & Sur. Co.*, 19 F.2d 110, 113 (6th Cir. 1927) (collecting cases); *Prudential Ins. Co. of Am. v. Hummer*, 84 P. 61, 63 (Colo. 1906); *Brocato v. Sun Underwriters Ins. Co. of N.Y.*, 53 So. 2d 246, 249 (La. 1951); *Sherwood Jewelers-Newark, Inc. v. Philadelphia Nat'l Ins. Co.*, 102 F. Supp. 103, 104 (D.N.J. 1952) (collecting cases).

Reflective of this trend, the Tenth Circuit has recognized the rule applying estoppel to contractual limitation periods in insurance agreements on four occasions. First, in *Insurance Co. of North America v. Board of Education of Independent School Dist. No. 12, Texas County, Okla. et al.*, 196 F.2d 901, 904 (10th Cir. 1952), the Tenth Circuit interpreted Oklahoma law, noting that in a statutory fire insurance policy, the insurance company's acts which deprive the insured of the right to bring an action within the statute of limitations "operate[] to suspend the running of the statute of limitation until a denial of liability, after which the insured is given a reasonable time to commence suit." Next, in *Aimonetto v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 365 F.2d 599, 600 (10th Cir. 1966), the Tenth Circuit interpreted Wyoming law, noting that estoppel may apply where the insurer has "lull[ed] the insured into a sense of security by prolonged negotiations beyond the period of limitation." And in *Platis v. American Casualty Co.*, 466 F.2d 35, 38 (10th Cir. 1972), the Tenth Circuit interpreted Utah law,

concluding that the insurance company was not estopped from relying on its contractual limitation period because it gave the insured ample time to bring his action within the contractual limitation period and the applicable statute. Finally, in *Saddletree Holding, LLC v. Evanston Insurance Co.*, No. 23-8024, 2024 WL 1883901, at *3 (10th Cir. Apr. 30, 2024), the Tenth Circuit interpreted Wyoming's estoppel doctrine, holding that the insurer was not estopped from relying on the insurance policy's limitation period because it did not have an affirmative duty to provide the information sought by the insured.

In addition, several cases in the District of Kansas have recognized the principle that Sexton promotes when interpreting Kansas law. For example, in *Coates v. Metropolitan Life Insurance Co.*, 515 F. Supp. 647, 651 (D. Kan. 1981), the district court applied equitable estoppel to find that the defendant insurer could not rely on a contractual limitation period where the insurer failed to provide a copy containing the limitation period to the insured upon request. And in *Boardwalk Apartments, L.C. v. State Auto Property and Casualty Insurance Co.*, No. 11-2714, 2012 WL 4523113, at *4 (D. Kan. Oct. 2, 2012), the district court found that an insurer could not rely on a contractual limitation period where the insurer's actions were the reason for the plaintiff's delay in bringing suit.

On the other hand, there are no compelling reasons to believe the Kansas Supreme Court would reach a contrary conclusion. Bankers disagrees, arguing that Sexton has not "present[ed] a recognized public policy exception to Kansas's longstanding enforcement of contractual limitations provisions," and cites two cases where the court enforced the contractual limitation provision. Doc. 7 at 5–6 (citing *Shree Kuber, LLC v. Steadfast Ins. Co.*, No. 23-4020, 2023 WL 3995664, at *1 (D. Kan. June 14, 2023), and then citing *Ernst v. Nationwide Mut. Ins. Co.*, No. 20-CV-2340, 2022 WL 1193886, at *3 (D. Kan. Apr. 21, 2022)). That argument is a non sequitur. And the cases are inapposite. In *Shree Kuber*, for example, the district court enforced a contractual limitations period because the insured failed to establish that the Kansas Supreme Court's COVID-19 emergency order concerning statutory rights extended to private contractual limitations. *Shree Kuber, LLC*, 2023 WL 3995664, at *3–4. And in *Ernst*, the district court concluded the insured failed to allege facts showing that the insurer "acted to *induce* a specific belief in him." *Ernst v. Nationwide Mut. Ins. Co.*, 2022 WL 1193886, at *7 (emphasis in original). Neither the argument proffered nor the cases

8

cited suggest the Kansas Supreme Court would reject equitable estoppel as a defense to a contractual limitation.

## B

That equitable estoppel is available to avoid a contractual limitation provision answers only half of the question. To survive Bankers' motion to dismiss, there must be a basis to believe it application is plausible in this dispute.

Under Kansas law, "[e]quitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct." *Steckline Commc'ns, Inc. v. J. Broad. Grp. of Kan., Inc.*, 388 P.3d 84, 91 (Kan. 2017). A party attempting to invoke equitable estoppel typically "must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed." *Id.* "It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." *Id.* In the similar context of a statute of limitations defense, "a defendant, who has acted in such a fashion that his conduct is sufficient to lull his adversary into a false sense of security forestalling the filing of suit until after the statute has run, will be precluded from relying on the bar of the statute." *Coffey v. Stephens*, 599 P.2d 310, 312 (Kan. Ct. App. 1979).

When equitable estoppel is asserted as the basis for denying a motion to dismiss, the focus is on the allegations in a complaint. Generally speaking, a party invoking equitable estoppel must establish that the other party—through its acts, representations, and admissions—lulled it into a false sense of security that it did not need to file suit before the contractual limitation period, and that the party invoking equitable estoppel reasonably relied on the other party's representations. *L. Ruth Fawcett Tr. v. Oil Producers Inc. of Kan.*, 507 P.3d 1124, 1144–45 (Kan. 2022) (articulating the estoppel standard in the statute of limitations context). When equitable estoppel is invoked in response to a motion to dismiss, the party invoking equitable estoppel does not have the burden to have anticipated the assertion of the affirmative defense and plead facts establishing equitable estoppel applies. *Cf. Bistline v. Parker*, 918 F.3d 849, 876 (10th Cir. 2019) (citing *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018), and then citing Fed. R. Civ. P. 8(c)(1)) (applying federal pleading standards to state-based claim subject to Utah's statutes of limitations and Utah's tolling rules);

*see also* Kan. Stat. Ann. § 60-208(c)(1)(P) (listing statute of limitations as an affirmative defense). Instead, a complaint can only be dismissed on the basis of an affirmative defense like contractual limitations if the plaintiff alleged facts that plainly admit *both* that it filed suit outside of the limitation period and that the facts cannot give rise to estoppel under Kansas law. *See Bistline*, 918 F.3d at 876 (citing *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1210 (10th Cir. 2013) (holding that a federal court sitting in diversity applies the state's statutes of limitations and tolling rules)).

The facts Sexton alleged preclude Bankers' request for dismissal based on the contractual provision concerning the timeliness of Sexton's suit. Nothing is pled in the Complaint that would preclude the application of estoppel. And Bankers' arguments do not contest that: they only alleged such an exception should not be recognized under Kansas law. That alone warrants rejecting Bankers' motion. *Cf. Hanh Ho Tran v. Trs. of the State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." (quoting *Phillips v. Calhoun*, 956 F.2d 949, 953–54 (10th Cir. 1992))).

Not only is there no reason to believe equitable estoppel does not apply, the facts pled in the Complaint suggest equitable estoppel may preclude Bankers' from relying on its contractual limitation in this case. *First*, the Complaint alleges that Bankers repeatedly indicated to Sexton that it intended to accept liability for the water damage in his residence. Doc. 1 at ¶¶ 21, 23, 35–37, 46, 50. Admittedly, some of the representations to Sexton were general—like when Bankers sued Alpha Roofing to recover costs it had paid to Sexton for the water damage and Bankers stated in a filing that it "has paid, *and will pay*, money to and on behalf of Sexton for damage to Sexton's Residence and his personal property." *Id.* at ¶ 21 (emphasis in original). But others related to specific costs it would cover. For example, one agent sent multiple letters to Sexton stating that Bankers would cover Sexton's living expenses while his kitchen was being restored to its pre-loss condition. *Id.* at ¶¶ 35–36. Another time, an agent approved that Bankers would cover the expenses necessary to purchase and install a leak-detection system. *Id.* at ¶ 46. In fact, Sexton incurred some of these expenses at Bankers' request. Specifically, one of Banker's agents asked Sexton to obtain an independent inspection to determine what repairs his kitchen needed.

*Id.* at ¶ 49. Sexton did so, and another agent told him he would be reimbursed for the inspection, which cost almost $10,000. *Id.* at ¶ 49. Yet despite these representations, Bankers did not reimburse Sexton. *See, e.g.*, Doc. 1 at ¶¶ 46, 49, 53, 58. This is enough to suggest that Bankers might have participated in the type of conduct that would lull Sexton into a false sense of security that he did not need to file suit before the contract limitation period expired. *See Hall v. S. River Restoration, Inc.*, 270 F. Supp. 3d 117, 121–22 (D.D.C. 2017) (finding that an insurer defendant was estopped from asserting a timeliness defense because it had repeatedly told the plaintiffs that it would restore their home to its pre-damage state); *cf. Lucero v. Travelers Com. Ins. Co.*, 647 F. Supp. 3d 1115, 1123–24 (D.N.M. 2022) (declining to find estoppel where the insurer had undisputedly denied the plaintiff's claim before the contractual limitation period expired and never suggested it would cover the plaintiff's expenses).

*Second*, the timing of Bankers' representations to Sexton suggests estoppel is warranted. Bankers and Sexton were frequently communicating about Sexton's claim over the course of at least three years. *See, e.g.*, Doc. 1 at ¶¶ 52, 66. During that time, Bankers arranged for five inspections of Sexton's of Sexton's residences and adjusted Sexton's claim eight times. *Id.* at ¶ 66. Then, just weeks before the five-year contractual limitation period expired, Bankers told Sexton that the last step would be for Sexton to submit to an examination under oath. *Id.* at ¶ 60. Yet Bankers delayed scheduling this examination until two months *after* the contractual period. *Id.* at ¶ 62. A couple months later, Bankers ultimately denied Sexton's claim. *Id.* at ¶ 63. This timeline further supports a finding of estoppel. *See Presbyterian Healthcare Servs. v. Factory Mut. Ins. Co.*, 512 F. Supp. 3d 1169, 1178 (D.N.M. 2021) (estopping an insurer from asserting a timeliness defense because the insurer continued negotiating with the plaintiff up to and after the limitation period expired and had asked the plaintiff to provide more information less than two weeks before the time period expired).

*Third*, Sexton has alleged facts suggesting that Bankers was responsible for the delays that led to his claim being denied after the five-year limitation period had passed. Sexton timely complied with Bankers' repeated requests for documentation, inspections, and other proof to support his claimed losses from the rainstorm. *See, e.g.*, Doc. 1 at ¶ 55. But, as previously noted, Bankers delayed scheduling Sexton's examination under oath, a prerequisite to denying his claim, until after the five-year limitation period had expired. *See Dunaway v. Allstate Ins. Co.*,

813 N.E.2d 376, 384 (Ind. Ct. App. 2004) (finding estoppel where the insurer's actions caused the plaintiffs to wait until after the limitation period passed to file suit, rather than the plaintiffs' own actions).

There are decisions from other jurisdictions that have declined to apply equitable estoppel when invoked in situations materially distinguishable from the circumstances that Sexton identifies. For example, the Sixth Circuit affirmed the entry of summary judgment in favor of the insurer where there was no evidence that it lulled the insured "into inaction by promising to pay their claim" by waiting until after the limitation period to deny the claim because the lengthy investigation suggested a possibility that the claim would be denied. *Smith v. Allstate Ins. Co.*, 403 F.3d 401, 407 (6th Cir. 2005). A trial judge in New York also granted the insurer summary judgment and refused to apply estoppel where the insurer simply engaged in ordinary negotiation processes that happened to extend beyond the contractual limitation period but repeatedly asserted its claims processing investigation was not intended to constitute a waiver of any contractual limitation. *Penna v. Peerless Ins. Co.*, 510 F. Supp. 2d 199, 207 (W.D.N.Y. 2007). And, more recently, a Pennsylvania court granted the insurer judgment as a matter of law where there was no evidence that the insurer lulled the insured into inaction and, instead, the insured's own actions caused the delay in resolving the claim. *Long v. Farmers New Cent. Ins. Co.*, 267 F. Supp. 3d 530, 535 (E.D. Pa. 2017).

Discovery may ultimately undermine Sexton's claim. Indeed, Bankers makes several arguments in its moving papers to suggest that estoppel should not apply. Doc. 7 at 3–4. But Bankers' factual allegations cannot be considered, much less credited, at this stage. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (noting that matters outside the complaint may not be considering when evaluating whether a claim has been stated unless that material is incorporated by reference or attached to the complaint and is indisputably authentic); *United States v. Leffler*, 942 F.3d 1192, 1197–98 (10th Cir. 2019) (noting arguments made for the first time in a reply brief undermine the adversarial process). As a result, Bankers' motion to dismiss must be denied.

### III

For the foregoing reasons, Bankers' Motion to Dismiss, Doc. 6, is DENIED.

It is so ordered.

Date: January 28, 2026         s/ Toby Crouse
                               Toby Crouse
                               United States District Judge